## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| GSE ENVIRONMENTAL, INC., *et al.*,[1] | Case No. 14-11126 (___) |
| Debtors. | (Joint Administration Requested) |

### DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS APPROVING NOTIFICATION AND HEARING PROCEDURES FOR CERTAIN TRANSFERS OF, OR CLAIMS OF WORTHLESSNESS WITH RESPECT TO, CERTAIN EQUITY SECURITIES

The above-captioned debtors and debtors in possession (collectively, the "Debtors") file this motion (the "Motion") for entry of interim and final orders, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B**, respectively, (a) approving certain notification and hearing procedures, substantially in the form of **Exhibit 1** annexed to **Exhibit A** attached hereto (the "Procedures"), regarding certain purchases, sales, or other transfers of, or declarations of worthlessness for federal or state tax purposes with respect to, equity securities in Debtor GSE Holding, Inc. or any Beneficial Ownership[2] therein (the "Equity Securities"), (b) directing

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: GSE Environmental, Inc. (1074); GSE Environmental, LLC (1539); GSE Holding, Inc. (9069); and SynTec, LLC (2133). The location of the Debtors' service address is: 19103 Gundle Road, Houston, Texas 77073.

[2] "Beneficial Ownership" will be determined in accordance with the applicable rules of section 382 of the Internal Revenue Code (the "IRC"), and the Treasury Regulations thereunder (other than Treasury Regulations Section 1.382-2T(h)(2)(i)(A)) and includes direct, indirect and constructive ownership (*e.g.*, (1) a holding company would be considered to beneficially own all equity securities owned by its subsidiaries, (2) a partner in a partnership would be considered to beneficially own its proportionate share of any equity securities owned by such partnership, (3) an individual and such individual's family members may be treated as one individual, (4) persons and entities acting in concert to make a coordinated acquisition of equity securities may be treated as a single entity and (5) a holder would be considered to beneficially own equity securities that such holder has an Option to acquire; an "Option" to acquire stock includes all interests described in Treasury Regulations Section 1.382-4(d)(9), including any contingent purchase right, warrant, convertible debt, put, call, stock subject to risk of forfeiture, contract to acquire stock, or similar interest, regardless of whether it is contingent or otherwise not currently exercisable.

that any purchase, sale, or other transfer of, or declaration of worthlessness with respect to, the Equity Securities in violation of the Procedures is null and void *ab initio*, and (c) granting related relief. In support of this Motion, the Debtors respectfully state as follows.[3]

## Jurisdiction and Venue

1. The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors confirm their consent pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory bases for the relief requested herein are sections 362 and 541 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code").

## Relief Requested

4. By this Motion, the Debtors seek entry of interim and final orders, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B**, respectively: (a) approving the Procedures, without prejudice to the Debtors' right to waive the Procedures, or any term thereof,

---

[3] The facts and circumstances supporting this Motion are set forth in the *Declaration of Dean Swick in Support of First Day Motions* (the "First Day Declaration"), filed contemporaneously herewith and incorporated by reference herein.

with respect to any purchase, sale, or other transfer of, or declaration of worthlessness with respect to, the Equity Securities; (b) directing that any purchase, sale, or other transfer of, or declaration of worthlessness with respect to, the Equity Securities in violation of the Procedures is null and void *ab initio*; and (c) granting related relief. In addition, the Debtors request that the Court schedule a final hearing within approximately 25 days of the commencement of these chapter 11 cases to consider approval of this Motion on a final basis.

## Background

5. On the date hereof (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. Concurrently with the filing of this Motion, the Debtors filed a motion requesting procedural consolidation and joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b). No request for the appointment of a trustee or examiner has been made in these chapter 11 cases, and no committees have been appointed or designated.

## The Tax Attributes

6. A company generates net operating losses ("NOLs"), generally, if it has incurred more expenses than it has earned revenues in a tax year. Subject to certain conditions, as discussed below, a company may apply, or "carryforward," NOLs to reduce future tax payments in a tax year or years up to 20 years after the tax year in which the NOLs were generated. 26 U.S.C. §§ 39, 172. The Debtors have NOLs in an amount of approximately $33.4 million as of December 31, 2013.

7. The Debtors also have significant tax credits (the "Tax Credits" and, together with the NOLs, the "Tax Attributes") in an amount of approximately $16.3 million as of December 31, 2013. The Tax Credits consist of certain foreign tax credits and alternative minimum tax

3

credits. The Tax Credits that relate to alternative minimum tax credits can be carried forward indefinitely to offset the regular income tax, and the Tax Credits that relate to foreign tax credits can be carried forward up to ten subsequent tax years. *See* 26 U.S.C. §§ 53, 904(c).

8. The Debtors anticipate that utilization of the Tax Attributes in future tax years may generate up to approximately $29.7 million in cash savings from reduced taxes assuming an effective combined state and federal tax rate of 40 percent for the post-emergence company.[4] The Tax Attributes are valuable assets of the Debtors' estates and the value of the Tax Attributes will inure to the benefit of all of the Debtors' stakeholders.

### An "Ownership Change" May Negatively Impact the Debtors' Utilization of the Tax Attributes

9. Section 382 of the IRC limits the amount of taxable income that can be offset by a corporation's NOLs and certain built-in losses in taxable years (or a portion thereof) following an ownership change. Section 383 of the IRC similarly limits a corporation's use of certain tax credits in taxable years (or portions thereof) following an ownership change.

10. Generally, an "ownership change" occurs if the percentage (by value) of the stock of a corporation owned by one or more 5 percent shareholders has increased by more than 50 percentage points over the lowest percentage of stock owned by such shareholders at any time during the three-year testing period ending on the date of the ownership change. 26 U.S.C. § 382(g).[5] For example, an ownership change would occur in the following situation:

---

[4] For the avoidance of doubt, this figure does not take into account any reduction in the Tax Attributes that may take place due to the cancellation of any debt obligation of the Debtors.

[5] For purposes of section 382 of the IRC, a "5-percent shareholder" includes those entities or individuals that have Beneficial Ownership of 5 percent or more of a corporation's stock at any time during the testing period under section 382. In addition, the shareholders that have Beneficial Ownership of less than 5 percent of a corporation's stock generally are treated together as one 5-percent shareholder.

An individual ("A") owns 50.1 percent of the stock of corporation XYZ. A sells her 50.1 percent interest to another individual ("B"), who owns 5 percent of XYZ's stock. Under section 382, an ownership change has occurred because B's interest in XYZ has increased more than 50 percentage points (from 5 percent to 55.1 percent) during the testing period. The same result would follow even if B owned no XYZ stock prior to the transaction with A because B both becomes a 5 percent shareholder and increases his ownership by more than 50 percent percentage points during the testing period.

11. If an ownership change occurs, section 382 of the IRC limits the amount of a corporation's future income that may be offset by its "pre-change losses" to an annual amount equal to the value of the corporation prior to the ownership change multiplied by the long-term tax exempt rate (approximately 3.4 percent for ownership changes occurring during May 2014). IRC § 382(b). "Pre-change losses" include NOLs and any net unrealized built-in losses (as defined in section 382(h)(3) of the IRC). Similar rules apply to limit the availability of tax credits to offset a corporation's future income in the event an ownership change occurs. IRC § 383. Thus, certain transfers of, or declarations of worthlessness with respect to, the Equity Securities effected before the effective date of the Debtors' chapter 11 plan of reorganization may trigger an "ownership change" for IRC purposes, severely endangering the Debtors' ability to utilize the Tax Attributes and causing substantial damage to the Debtors' estates.

**Proposed Procedures for Transfers of, or Declarations
of Worthlessness with Respect to, the Equity Securities[6]**

12. The Procedures are the mechanism by which the Debtors will monitor, and object to, certain transfers of, and declarations of worthlessness with respect to, the Equity Securities to

---

[6] Capitalized terms used in this section but not otherwise defined herein have the meanings ascribed to them in the Procedures.

5

ensure preservation of the Tax Attributes. The Procedures, which are fully set forth in **Exhibit 1** annexed to **Exhibit A** attached hereto, are summarized below:[7]

Procedures for Transfers of the Equity Securities

- Any person or entity that has Beneficial Ownership of 4.5 percent or more of the Equity Securities must serve and file a Declaration of Substantial Holder, annexed to the Procedures as **Exhibit 1A** thereof.

- Prior to effectuating any transfer of the Equity Securities that would (a) increase or decrease a Substantial Holder's Beneficial Ownership, or (b) would result in another person or entity becoming or ceasing to be a Substantial Holder, the parties to such transaction must serve and file a Declaration of Proposed Transfer, annexed to the Procedures as **Exhibit 1B** or **Exhibit 1C**, as applicable.

- The Debtors have 30 calendar days after receipt of a Declaration of Proposed Transfer to object to the proposed transaction.

- If the Debtors timely object, the proposed transaction remains ineffective pending a ruling thereafter on the merits.

- If the Debtors do not object, the proposed transaction may proceed solely as described in the Declaration of Proposed Transfer.

Procedures for Declarations of Worthlessness of the Equity Securities

- Any person or entity that has Beneficial Ownership of 50.0 percent or more of the Equity Securities must serve and file a Declaration of 50 Percent Holder, annexed to the Procedures as **Exhibit 1D**.

- Prior to filing any federal or state tax return, or any amendment to such a return, claiming any deduction for worthlessness of the Equity Securities for a tax year ending before the Debtors' emergence from chapter 11, such 50 Percent Holder must serve and file a Declaration of Proposed Deduction, annexed to the Procedures as **Exhibit 1E**.

- The Debtors have 30 calendar days after receipt of a Declaration of Proposed Deduction to object to the proposed action.

- If the Debtors timely object, the proposed deduction remains ineffective pending a ruling thereafter on the merits.

- If the Debtors do not object, the proposed deduction may proceed solely as described in the Declaration of Proposed Deduction.

---

[7] To the extent that this summary and the terms of the Procedures are inconsistent, the terms of the Procedures control.

Other Procedures

- The Debtors will serve notice of the Interim Order or the Final Order (as applicable) and the Procedures upon all parties in interest, including all registered holders of the Equity Securities.

- Any transfer of, and declaration of worthless with respect to, the Equity Securities in violation of the Procedures is null and void *ab initio*.[8]

13. As of the Petition Date, one financial sponsor Beneficially Owns more than 50 percent of the Equity Securities, and another holder Beneficially Owns more than 4.5 percent of the Equity Securities.

## Basis for Relief

### I. Approving the Procedures Is Warranted

14. Section 541 of the Bankruptcy Code provides that property of the estate comprises, among other things, "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). The Tax Attributes are property of the Debtors' estates. *See e.g., In re Prudential Lines, Inc.*, 107 B.R. 832, 839 (Bankr. S.D.N.Y. 1989), *aff'd*, 119 B.R. 430 (S.D.N.Y. 1990), *aff'd*, 928 F.2d 565 (2d Cir. 1991) ("[D]ebtor's potential ability to utilize NOLs is property of an estate . . . ."); *In re Delta Air Lines, Inc.*, No. 05-17923 (PCB) (Bankr. S.D.N.Y. Sept. 16, 2005) (finding NOLs are property of debtors' estate); *In re Forman Enters., Inc.*, 273 B.R. 408, 415 (Bankr. W.D. Pa. 2002) (same); *In re White Metal Rolling & Stamping Corp.*, 222 B.R. 417, 424 (Bankr. S.D.N.Y. 1998) (same). Section 362(a)(3) of the Bankruptcy Code, moreover, stays "any act [of an entity] to obtain possession of property of the estate or of property from the estate or to exercise control

---

[8] The notice provisions in the Procedures satisfy due process and the strictures of Bankruptcy Rule 9014 by providing the relevant counterparties with a notice and an opportunity to object and attend a hearing. *See, e.g., In re Atamian*, 368 B.R. 375, 378 (Bankr. D. Del. 2007) ("Rule 9014 does not require a hearing, only an opportunity for a hearing."); *In re Colo. Mountain Cellars, Inc.*, 226 B.R. 244, 246 (D. Colo. 1998) (noting that a hearing is not required to satisfy Bankruptcy Rule 9014).

over property of the estate." Accordingly, any act of a holder of the Equity Securities that causes the termination, or limits use, of the Tax Attributes violates the automatic stay. *In re Phar-Mor, Inc.*, 152 B.R. 924, 927 (Bankr. N.D. Ohio 1993) ("[T]he sale of stock is prohibited by § 362(a)(3) as an exercise of control over the NOL, which is property of the estate."); *In re Grossman's, Inc.*, No. 97-695 (PJW), 1997 WL 33446314, at *1 (Bankr. D. Del. Oct. 9, 1997) (holding that NOLs were property of debtors' estates and protected by automatic stay).

15. Under sections 382 and 383 of the IRC, certain transfers of, or declarations of worthlessness with respect to, the Equity Securities prior to the consummation of a chapter 11 plan could limit the use of the Tax Attributes. As stated above, the Debtors have approximately $33.4 million of NOLs and approximately $16.3 million of Tax Credits as of December 31, 2013. The Debtors expect the Tax Attributes to generate a future cash benefit to the reorganized Debtors of up to approximately $29.7 million. The Tax Attributes are valuable assets of the Debtors' estates and the value will inure to the benefit of all of the Debtors' stakeholders. The limitation of the Tax Attributes would be materially detrimental to all parties in interest. Implementation of the Procedures is necessary and appropriate to enforce the automatic stay and, critically, to preserve the value of the Tax Attributes for the benefit of the Debtors' estates.[9]

---

[9] Bankruptcy Rule 6003 empowers a court to grant relief within the first 21 days after the Petition Date "to the extent that relief is necessary to avoid immediate and irreparable harm." Bankruptcy Rule 6003 does not apply to this Motion because the Debtors are not seeking to use, sell, or lease property of the estate, or assume or assign an executory contract. *See* Advisory Comm. Note to 2011 Amendment to Fed. R. Bankr. P. 6003 ("[T]he rule does not prohibit the court from entering orders in the first 21 days of the case that *may relate* to the motions and applications set out in (a), (b), and (c); it is only prohibited from granting the relief requested by those motions or applications.") (emphasis added). The requirements of Rule 6003 are satisfied in any event. The Tax Attributes are a key asset of the Debtors' estates. Thus, loss of the Tax Attributes would cause immediate and irreparable harm. The relief requested herein seeks to prevent that harm.

16. Courts in this jurisdiction have routinely restricted transfers of, or declarations of worthlessness with respect to, equity in a debtor, or instituted notice procedures regarding proposed transfers, to protect a debtor against the possible loss of its tax attributes. *See, e.g., In re Dolan Co.*, No. 14-10614 (BLS) (Bankr. D. Del. Apr. 17, 2014) (approving notification procedures and restricting certain transfers of equity interests); *In re Dex One Corp.*, No. 13-10533 (KG) (Bankr. D. Del. Apr. 10, 2013) (same); *In re Atrium Corp.*, No. 10-10150 (BLS) (Bankr. D. Del. Feb. 23, 2010) (approving notification procedures and restricting certain transfers of, and declarations of worthlessness with respect to, equity interests); *see also In re Cengage Learning, Inc.*, No. 13-44106 (ESS) (Bankr. E.D.N.Y. July 24, 2013) (same); *In re Hawker Beechcraft, Inc.*, No. 12-11873 (SMB) (Bankr. S.D.N.Y. June 27, 2012) (same).[10]

### Waiver of Bankruptcy Rule 6004(a) and 6004(h)

17. To implement the foregoing successfully, the Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

### Notice

18. The Debtors will provide notice of this Motion to: (a) the Office of the United States Trustee for the District of Delaware; (b) the holders of the 25 largest unsecured claims against the Debtors (on a consolidated basis); (c) the administrative agent under the Debtors' first lien credit facility; (d) counsel to the administrative agent; (e) local counsel to the administrative

---

[10] Because of the voluminous nature of the orders cited herein, such orders have not been attached to this Motion. Copies of these orders are available upon request to the Debtors' proposed counsel.
9

agent; (f) the first lien credit facility lenders; (g) counsel to the first lien credit facility lenders; (h) local counsel to the first lien credit facility lenders; (i) the United States Environmental Protection Agency; (j) the United States Attorney's Office for the District of Delaware; (k) the Internal Revenue Service; (l) the office of the attorneys general for the states in which the Debtors operate; (m) the Securities and Exchange Commission; (n) all registered holders of the Equity Securities; and (o) any party that has requested notice pursuant to Bankruptcy Rule 2002. As this Motion is seeking "first day" relief, within two business days of the hearing on this Motion, the Debtors will serve copies of this Motion and any order entered in respect to this Motion as required by Local Rule 9013-1(m). The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## No Prior Request

19. No prior request for the relief sought in this Motion has been made to this or any other court.

*[Remainder of this page intentionally left blank]*

WHEREFORE, the Debtors respectfully request entry of interim and final orders, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B**, respectively, (a) granting the relief requested herein, and (b) granting ~~such other~~ relief as is just and proper.

Wilmington, Delaware
Dated: May 4, 2014

/s/ Laura Davis Jones
Laura Davis Jones (DE Bar No. 2436)
Timothy P. Cairns (DE Bar No. 4228)
**PACHULSKI STANG ZIEHL & JONES LLP**
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
Email: ljones@pszjlaw.com
tcairns@pszjlaw.com

- and -

Patrick J. Nash, Jr., P.C. (*pro hac vice* admission pending)
Jeffrey D. Pawlitz (*pro hac vice* admission pending)
Bradley Thomas Giordano (*pro hac vice* admission pending)
**KIRKLAND & ELLIS LLP**
300 North LaSalle
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
Email: patrick.nash@kirkland.com
jeffrey.pawlitz@kirkland.com
bradley.giordano@kirkland.com

*Proposed Co-Counsel for the
Debtors and Debtors in Possession*