# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>GSE ENVIRONMENTAL, INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 14-11126 (MFW)<br>(Jointly Administered)<br><br>Re: Docket Nos. 20 and 21<br><br>Proposed Hearing: June 2, 2014 at 11:30 a.m.<br>Proposed Objection Deadline: At the Hearing |

**EMERGENCY MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO CONTINUE THE HEARING ON DEBTORS' MOTION FOR ENTRY OF AN ORDER (A) APPROVING THE DISCLOSURE STATEMENT, (B) ESTABLISHING THE VOTING RECORD DATE, VOTING DEADLINE, AND OTHER DATES, (C) APPROVING PROCEDURES FOR SOLICITING, RECEIVING, AND TABULATING VOTES ON THE PLAN AND FOR FILING OBJECTIONS TO THE PLAN, (D) APPROVING THE MANNER AND FORMS OF NOTICE AND OTHER RELATED DOCUMENTS, AND (E) GRANTING RELATED RELIEF**

The Official Committee of Unsecured Creditors (the "Committee"), by and through its proposed counsel, hereby moves this Honorable Court for an order continuing the hearing scheduled for June 11, 2014 at 11:30 AM (Eastern) on the Debtors' Motion for Entry of an Order (A) Approving the Disclosure Statement, (B) Establishing the Voting Record Date, Voting Deadline, and Other Dates, (C) Approving Procedures for Soliciting, Receiving, and Tabulating Votes on the Plan and for Filing Objections to the Plan, (D) Approving the Manner and Forms of Notice and Other Related Documents, and (E) Granting Related Relief (the "Disclosure Statement Approval Motion") (D.I. 21) and states as follows:

## I. INTRODUCTION

1. This case involves the Debtors' attempt to deliver all of their equity to prepetition lenders, who acquired their debt just prior to the bankruptcy filing. The delivery of that equity

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: GSE Environmental, Inc. (1074); GSE Environmental, LLC (1539); GSE Holding, Inc. (9069); and SynTec, LLC (2133). The location of the Debtors' service address is: 19103 Gundle Road, Houston, Texas 77073.

to the lenders may provide them with more than a full recovery on their secured debt at the expense of the Debtors' Class 5 unsecured creditors. The Debtors seek to avoid scrutiny by agreeing to short milestones that are designed to obtain confirmation of a chapter 11 plan that unfairly limits and cuts off certain unsecured claims notwithstanding the going concern value of the Debtors or their substantial *unencumbered* interest in their foreign affiliates.

2. The proposed Disclosure Statement veils the Debtors' plot by setting forth generalities bereft of *any* factual support. To avoid potential exposure of the fact that Class 5 creditors may receive less than a 100% distribution under the proposed chapter 11 plan, the Debtors seek to establish a bar date for unsecured claims *after* the hearing on approval of the Disclosure Statement. Establishing a bar date after a disclosure statement hearing may be appropriate in pre-packaged or pre-arranged cases where unsecured creditors are unimpaired. A post-disclosure statement approval bar date is inappropriate in these cases where the Disclosure Statement is void of meaningful information regarding the amount of Class 5 claims and the value of unencumbered assets available for distribution to unsecured creditors, and where the Debtors propose a $1 million cap for Class 5 unsecured creditors but "anticipate" (without confidence) that such cap provides a 100% recovery.

3. The Debtors (fiduciaries for their estates and unsecured creditors) should not use timing as a weapon, particularly when combined with a lack of meaningful information. Accordingly, the hearing on the Disclosure Statement should be continued until *after* the bar date so that there is adequate information regarding the amount of Class 5 claims. In addition, significantly more detailed disclosure is required, among other things, regarding the value of the Debtors *and* their unencumbered interest in their foreign affiliates. Allowing voting in the

current circumstances would require unsecured creditors to vote based on incomplete and misleading information.

## II. JURISDICTION AND VENUE

4. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is appropriate in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B).

## III. FACTUAL BACKGROUND

### A. Generally

5. On May 4, 2014, GSE Environmental and its debtor-affiliates (the "Debtors") filed a voluntary petition for relief under Chapter 11 of title 11 of the U.S. Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code").

6. On May 5, 2014, the Debtors filed the Disclosure Statement (the "Disclosure Statement") (D.I. 20) Relating to the Debtors' Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code (the "Plan") (D.I. 19) and the Disclosure Statement Approval Motion for, *inter alia,* approval of the Disclosure Statement.

7. On May 7, 2014, the Court scheduled a hearing regarding the Disclosure Statement Approval Motion for June 11, 2014 at 11:30 AM (Eastern) (the "Hearing").

8. On May 12, 2014, the Debtors filed their Motion to Approve Entry of an Order (A) Setting Bar Dates for Filing Proofs of Claim, Including Requests for Payment Under Section 503(b)(9), (B) Establishing Amended Schedules Bar Date and Rejection Damages Bar Date, (C) Approving the Form of and Manner for Filling Proofs of Claim, Including Section 503(b)(9) Requests, (D) Approving Notice of Bar Dates, and (E) Granting Related Relief Filed by GSE Environmental, Inc. (the "Bar Date Motion") (D.I. 86). A hearing on the Bar Date

Motion is currently scheduled for June 2, 2014, at 11:30 a.m. (Eastern).  In the Bar Date Motion, the Debtors generally seek a bar date for creditors (other than governmental creditors) that is at least 35 days after entry of the order granting the Bar Date Motion (the "Bar Date"). See Bar Date Motion at ¶ 4.

9. On Friday, May 16, 2014, the Office of the United States Trustee appointed the Committee.  On that same date, counsel for the Committee sent to Debtors' counsel a list of documents and related information necessary for the Committee's due diligence regarding the Disclosure Statement and the Plan.  The Debtors produced the first responsive documents four days later on May 20, 2014.  To date, many items remain outstanding, and the Committee continues its due diligence.

### B. The Disclosure Statement Deficiencies

10. The Disclosure Statement contains no meaningful information regarding the amount of Class 4 "Qualified Unsecured Trade Claims"[2] or the amount of Class 5 "General Unsecured Claims."  Compounding that deficiency is the lack of disclosure regarding the value of unencumbered assets available for holders of claims in such classes.

11. The Disclosure Statement provides that holders of Class 4 and 5 claims are impaired and entitled to vote.  See Disclosure Statement at p. 7.

12. The Debtors fail to disclose the number or amount of trade claims that qualify for Class 4 or whether all holders of trade claims are eligible for treatment in Class 4.

13. Class 5 is the catch-all class of unsecured creditors and would include, *inter alia*, litigation claims, rejection damages claims, environmental claims, trade claims which do not meet the conditions to be a Class 4 claimant, and workers compensation claims.

---

[2] Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the Disclosure Statement.

14. The Disclosure Statement further provides that Class 5 will receive a "projected recovery" of "100%." See Disclosure Statement at p. 4. Immediately after the "100%", however, is footnote 2, which provides that holders of Class 5 claims "will receive their Pro Rata share of the General Unsecured Claims Recovery Pool [*i.e.,* $1 million], "which the Debtors **anticipate** will be sufficient to pay Allowed General Unsecured Claims in full." See Disclosure Statement at p. 4 (emphasis added). The Debtors do not set forth any basis for such anticipation.

15. The Disclosure Statement indicates that Class 5 claimants "will receive their pro rata share of $1 million in cash, which amount was determined to be sufficient to pay general unsecured creditors 100 percent of their claims if the allowed amount of such claims is consistent with **the Debtors' projections**." Id. at 17 (emphasis added). The Debtors, however, do not disclose such projections.

16. The Debtors provide in the Disclosure Statement that a Liquidation Analysis and the Debtors' Financial Projections are attached as Exhibits B and C. Id. at 25-26. Those exhibits, however, are blank. See Disclosure Statement, Exs. B-C.

17. The Disclosure Statement also indicates that "statements made in this Disclosure Statement in connection with the Plan **are qualified in their entirety by** reference to the Plan, the exhibits and schedules attached to the Plan, and **the Plan Supplement**." See Disclosure Statement at p. 1 (emphasis added). The Debtors have not filed a Plan Supplement.

III. **RELIEF REQUESTED**

18. The Committee seeks a continuance of the Hearing because the Disclosure Statement contains no meaningful information regarding the amount of Class 4 or Class 5 unsecured claims or the unencumbered property available for distribution on such claims. The

Debtors should not be able to reduce dramatically the time for review and analysis of the Disclosure Statement ("**at least 28 days**" under Bankruptcy Rule 3017(a)) by failing to provide meaningful information and relevant documents until shortly before the Hearing. Moreover, continuing the Hearing until *after* the Bar Date will ensure that there is some basis for the amount of claims asserted against the Debtors and the percentage recovery under the Plan.

**IV.  BASIS FOR RELIEF REQUESTED**

19. Pursuant to Section 1125(b) of the Bankruptcy Code, a disclosure statement in solicitation of the plan must contain "adequate information."  See 11 U.S.C. § 1125(b).

20. Section 1125(a) of the Bankruptcy Code defines "adequate information", in relevant part, as "information of a kind, and in sufficient detail" as "would enable a hypothetical reasonable investor typical of holders of claims or interests of the relevant class to make an informed judgment about the plan[.]"  11 U.S.C. § 1125(a).

21. What constitutes adequate information varies from case to case.  See Oneida Motor Freight, Inc. v. United Jersey Bank, 848 F.3d 414, 417 (3d Cir. 1988) ("From the legislative history of § 1125 we discern that adequate information will be determined by the facts and circumstances of each case").

22. Courts in the Third Circuit consistently refuse to approve disclosure statements that lack information that a "reasonable hypothetical investor" would require to make an informed decision about a proposed plan.  See, e.g., Ryan Operations G.P. v. Santiam-Midwest Lumber Co., 81 F.3d 355, 362 (3d Cir. 1996); Oneida Motor Freight, 848 F.2d 441 at 447-48.

23. Disclosure is "critical" to the effective functioning of the federal bankruptcy system.  Oneida Motor Freight, Inc. 848 F.2d at 417; Ryan Operations G.P., 81 F.3d at 362 (citations omitted). "Because creditors in the bankruptcy court rely heavily on the debtor's

disclosure statement on determining whether to approve a proposed reorganization plan, **the importance of full and honest disclosure cannot be overstated**." Ryan Operations G.P., 81 F.3d at 362 (citations omitted) (emphasis added); Oneida Freight, 848 F.2d at 417 (declaring that the importance of such disclosure is "underlaid by the reliance placed upon the disclosure statement by the creditors and the court"); Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp., 337 F.3d 314, 322 (3d Cir. 2003) (quoting Oneida Freight).

24. Thus, a debtor's disclosure statement must, as a whole, provide information that is reasonably practicable to permit an informed judgment by impaired creditors entitled to vote on the plan. See Krystal, 337 F.3d at 322. In essence, a disclosure statement "must clearly and succinctly inform the average unsecured creditor what it is going to get, when it is going to get it, and what contingencies there are to getting its distribution." In re Ferretti, 128 B.R. 16, 19 (Bankr. D.N.H. 1991).

25. Here, the Debtors seek approval of a Disclosure Statement that falls far short of the requirement that a Disclosure Statement provide "adequate information" to make an informed decision as to whether to vote to accept or reject the Plan.

26. Although the Debtors "anticipate" a recovery for Class 5 creditors of "100%" (see Disclosure Statement at p. 4), the Debtors nevertheless lack enough confidence in that projection that they seek to cap the distribution to Class 5 creditors at $1 million (the General Unsecured Claims Recovery Pool). The Debtors do not set forth any basis for such anticipation.

27. Searching the 56-page Disclosure Statement for any reference to facts supporting the Debtors' anticipation, one comes upon the Debtors' statement that Class 5 claimants "will receive their pro rata share of $1 million in cash, which amount was determined to be sufficient to pay general unsecured creditors 100 percent of their claims if the allowed amount of such

claims is consistent with **the Debtors' projections**." See Disclosure Statement at p. 17 (emphasis added). Further review, however, reveals that no such projections are contained in, or attached to, the Disclosure Statement.

28. Having determined that there is no meaningful information regarding the amount of Class 5 claims, the Committee then searched the Disclosure Statement for meaningful information regarding the value of unencumbered assets (including, without limitation, a 34% interest in the Debtors' foreign affiliates). The Debtors indicate that a Liquidation Analysis and the Debtors' Financial Projections are attached as Exhibits B and C. Id. at 25-26. Those exhibits, however, are blank. See Disclosure Statement, Exs. B-C.

29. The Disclosure Statement further indicates that "statements made in this Disclosure Statement in connection with the Plan **are qualified in their entirety by** reference to the Plan, the exhibits and schedules attached to the Plan, and **the Plan Supplement**." See Disclosure Statement at p. 1 (emphasis added). The Debtors have not filed a Plan Supplement.

30. A disclosure statement fails the "adequate information" test where it contains mere statements of anticipation or opinion unsupported by facts. In re Egan, 33 B.R. 672, 675 (Bankr. N.D. Ill. 1983) ("without factual support, statements of opinion or belief are entirely inappropriate in Disclosure Statements").

31. Although the Debtors presumably will try to rectify the lack of meaningful information regarding the amount and treatment of unsecured claims prior to the Hearing, the Committee will not have an appropriate amount of time to analyze those documents. The objection period with respect to a Disclosure Statement is **at least 28 days** under Federal Rule of Bankruptcy Procedure 3017(a) ("after a disclosure statement is filed in accordance with Rule

3016(b), the court shall hold a hearing on at least 28 days' notice . . . to consider the disclosure statement and any objections or modifications thereto").

32. The importance of the Debtors' lack of meaningful disclosure cannot be overstated. As the Debtors acknowledge, unsecured claims "filed against the Debtors' estates may be materially higher than the Debtors have estimated" and that such claims "could reduce the recovery." See Disclosure Statement at p. 29.

33. The Court should not permit the Debtors to file a Disclosure Statement that contains unsupported, meaningless generalities and then provide relevant information and documents shortly before the Hearing. To do so would unfairly and dramatically rob the Committee of adequate time to analyze the relevant information and documents that have been missing. As the Debtors filed the inadequate Disclosure Statement on May 5, 2014, there is no good reason that the Debtors have not yet provided the relevant information.

34. The Disclosure Statement hearing should be continued until after the Bar Date. The Debtors acknowledge that unsecured claims "filed against the Debtors' estates may be materially higher than the Debtors have estimated" and that such claims "could reduce the recovery." See Disclosure Statement at p. 29. In light of that uncertainty and the Debtors' admissions that "[c]ertain litigation claims may not be covered entirely or at all by the Debtors' insurance policies", that "insurance carriers may seek to deny coverage," and that "the Debtors face an inherent risk of exposure to product liability claims (including claims for strict liability and negligence)," the Hearing should be continued until *after* the Bar Date.[3] At that time, the Debtors will be in a better position to provide *meaningful* disclosure to holders of Class 4 and 5 claims.

---

[3] Notably, these cases do not involve a pre-arranged or pre-packaged chapter 11 plan pursuant to which unsecured creditors are unimpaired. In the pre-arranged or pre-packaged plan context, a bar date (if any) need not be set prior to disclosure statement approval.

WHEREFORE, the Committee respectfully requests that this Court enter an order (i) continuing the June 11, 2014, hearing on approval of the Disclosure Statement until after the Bar Date and (ii) granting such other relief to the Committee as is appropriate.

Dated: May 27, 2014

Respectfully submitted,

REED SMITH LLP

By: /s/ Kurt F. Gwynne
Kurt F. Gwynne (No. 3951)
Kimberly E. C. Lawson (No. 3966)
Joseph M. Grieco (No. 5848)
1201 Market Street, Suite 1500
Wilmington, DE 19801
Phone: (302) 778-7550
Facsimile: (302) 778-7575
Email: kgwynne@reedsmith.com
Email: klawson@reedsmith.com
Email: jgrieco@reedsmith.com

and

Claudia Z. Springer, Esquire
Three Logan Square
Suite 3100
1717 Arch Street
Philadelphia, PA 19103
Phone: (215) 851-8100
Fax: (215) 851-1420
Email: cspringer@reedsmith.com

Proposed Counsel for The Official Committee of Unsecured Creditors for GSE Environmental, Inc.