## EXHIBIT B

**Liquidation Analysis**

## Liquidation Analysis

This hypothetical liquidation analysis (the "Liquidation Analysis") was prepared by Alvarez & Marsal North America, LLC ("A&M") in connection with A&M's representation of the Debtors in their chapter 11 cases and for use in this Disclosure Statement. The Liquidation Analysis indicates the values which may be obtained by classes of Claims and Interests upon disposition of the Debtors' assets, pursuant to a chapter 7 liquidation, as an alternative to the continued operation of the business under the Plan. Accordingly, asset values discussed herein may be different than amounts referred to in the Plan. The Liquidation Analysis is based upon the assumptions discussed herein. All capitalized terms not defined in this Exhibit have the meanings ascribed to them in the Disclosure Statement to which this Exhibit is attached.

On May 4, 2014, the Debtors commenced these chapter 11 cases in the District of Delaware (the "Petition Date"). This Liquidation Analysis has been prepared assuming that each of the Debtors' chapter 11 cases are converted to chapter 7 liquidation cases on July 31, 2014 (the "Liquidation Date").

The Liquidation Analysis assumes a phased-in shut down of the Debtors' Texas, South Dakota, and South Carolina operations and a going concern sale of its Maryland operations, and the sale of all other non-Debtor operations as going concerns (*i.e.*, the foreign entities). The liquidation of the Debtors' assets is based on book values as of March 31, 2014, unless otherwise stated. These book values are assumed to be representative of the Debtors' assets and liabilities at or about the Liquidation Date. This Liquidation Analysis also assumes the Debtors' estates are not substantively consolidated.

The Liquidation Analysis represents an estimate of recovery values and percentages based upon a hypothetical chapter 7 liquidation of the Debtors, if a chapter 7 trustee were appointed by the Bankruptcy Court to convert assets into cash. The determination of the hypothetical proceeds from the liquidation of assets is an uncertain process involving the extensive use of estimates and assumptions which, although considered reasonable by A&M and management, are inherently subject to significant business, economic and competitive uncertainties and contingencies beyond the control of the Debtors and its management.

ACCORDINGLY, NEITHER THE DEBTORS NOR THEIR ADVISORS MAKE ANY REPRESENTATION OR WARRANTY THAT THE ACTUAL RESULTS OF A LIQUIDATION OF THE DEBTORS WOULD OR WOULD NOT APPROXIMATE THE ASSUMPTIONS REPRESENTED HEREIN. ACTUAL RESULTS COULD VARY MATERIALLY. MOREOVER, THE RECOVERIES SHOWN DO NOT CONTEMPLATE A SALE OF THE DEBTORS' ASSETS ON A GOING CONCERN BASIS (UNLESS OTHERWISE NOTED). WHILE THE DEBTORS MAKE NO ASSURANCES, IT IS POSSIBLE THAT THE PROCEEDS RECEIVED FROM SUCH A GOING CONCERN SALE(S) WOULD BE MORE THAN THE HYPOTHETICAL LIQUIDATION, THE COSTS ASSOCIATED WITH THE SALE(S) WOULD BE LESS, FEWER CLAIMS WOULD BE ASSERTED AGAINST THE BANKRUPTCY ESTATE AND/OR CERTAIN ORDINARY COURSE CLAIMS WOULD BE ASSUMED BY THE BUYER(S) OF SUCH ASSETS.

THE UNDERLYING FINANCIAL INFORMATION IN THE LIQUIDATION ANALYSIS WAS NOT COMPILED, EXAMINED OR AUDITED BY ANY INDEPENDENT ACCOUNT.

**Summary Notes to the Liquidation Analysis**

1. In preparing the Liquidation Analysis, A&M and the Debtors have estimated an amount of Allowed Claims for each class of claimants based upon a review of the Debtors' DRAFT Schedules and Statements as of the Petition Date in the Chapter 11 proceeding, the Debtors' March 31, 2014 balance

sheets, as well as various first day pleadings. It should be noted that the cessation of a business in liquidation will trigger certain claims that otherwise would not exist under the Plan absent a liquidation. Examples of these kinds of claims include various potential employee claims (*e.g.*, severance claims, WARN Act claims), executory contract claims, customer claims, and lease rejection damage claims. Some of these types of claims could be significant and would be entitled to priority in payment over general unsecured claims. Those priority claims would be paid in full from the liquidation proceeds before the balance would be made available to pay general unsecured claims. However, no attempt has been made to estimate other additional unsecured claims that may result from such events under a chapter 7 liquidation because no funds are estimated to be available to general unsecured creditors based on this analysis.

The estimate of the amount of Allowed Claims set forth in the Liquidation Analysis should not be relied upon for any other purpose, including any determination of the value of any distribution to be made on account of Allowed Claims under the Plan. The actual amount of Allowed Claims could be materially different from the amount of claims estimated in the Liquidation Analysis as the claims process is on-going.

2. The Liquidation Analysis assumes the liquidation of substantially all of the Debtors' domestic operations over a six month period including the going-concern sale of the Maryland operation (SynTec), and the going-concern sale(s) of the remaining non-Debtor operations (i.e., the foreign locations), followed by a wind-down of the chapter 7 estate (collectively, the "Wind-Down"). During the first two to eight weeks of the Wind-Down (timing dependent upon location), it is assumed that the chapter 7 trustee would arrange for the Debtors to continue run their business operations in order to complete work-in-process inventory and to satisfy the existing customer backlog rather than incur additional claims and litigation. Subsequently, a limited group of personnel would be retained over a four to twelve week period (timing dependent upon location) to clean and secure all production equipment and pursue orderly sales of all of the remaining assets including excess finished goods and raw materials, and the production equipment. It is also assumed that the chapter 7 trustee would maintain the Houston corporate location with reduced staffing levels during the Wind-Down to manage and account for the North American and foreign operations, as well as collect accounts receivable, liquidate claims, arrange distributions, and administer and close the estates.

3. The Liquidation Analysis assumes that the chapter 7 trustee would fund the liquidation with available cash on hand and cash flow generated by the sale of the Debtors' assets. However, if the cash available to the chapter 7 trustee is not sufficient to fund an orderly liquidation and maximize value, the trustee could be forced to liquidate all of the Debtors' assets immediately. The amount of proceeds realized in such a sale could be substantially less than those assumed in the Liquidation Analysis.

4. The Liquidation Analysis assumes that the chapter 7 trustee liquidates the non-Debtor foreign entities via an asset sale not including the assumption of intercompany accounts/notes and that the sales proceeds are further reduced by any existing third party bank debt. This assumption could be negatively impacted by any foreign laws that would preclude the chapter 7 trustee from directing the sale of substantially all of the foreign entities' assets and would thus require the chapter 7 trustee to sell the stock of the non-Debtor foreign entities. Accordingly, it should be noted that a stock sale could yield a significant diminution in recovery value due to the existence of sizable intercompany accounts/notes due back to the Debtors from the non-Debtor foreign entities.

5. The Liquidation Analysis assumes that proceeds from a sale of the non-Debtor foreign entity assets would be distributed as follows: *first*, to satisfy secured obligations at the various non-Debtor foreign entities to the extent the proceeds arise from collateral securing those obligations; *second*, to satisfy intercompany net trade payables/receivables and notes payable obligations owed by each non-

Debtor foreign entity back to GSE Environmental, LLC (a Debtor entity that the pre-petition secured lenders have a first priority security interest on substantially all of the assets) on a pro rata basis; and *third*, to the extent available, to non-Debtor GSE International, Inc. on account of its ownership in the various non-Debtor foreign subsidiaries. Any proceeds transferred to non-Debtor GSE International, Inc. would subsequently be transferred to holders of Pre-Petition Secured Claims based on the guarantee and collateral package granted by GSE International, Inc. Note that in some circumstances, GSE Environmental, Inc. directly holds a *de minimis* amount of the ownership interest in the foreign subsidiaries (approximately 0.01% in those cases); however, the Liquidation Analysis does not take into account this *de minimis* ownership interest. Because GSE International, Inc. only guarantees obligations under the Pre-Petition Secured Facility—and not obligations under the DIP Facility—holders of Pre-Petition Secured Claims would share *pro rata* with respect to any distributable proceeds delivered to GSE International, Inc.

6. The Liquidation Analysis does not include estimates for tax consequences, both foreign and domestic, that may be triggered upon the liquidation and sale of assets in the manner described herein. Such tax consequences may be material and further diminish recoverable values on both foreign and domestic assets.

7. The Liquidation Analysis does not include recoveries resulting from any potential preference, fraudulent transfer or other litigation or avoidance actions.

8. The Liquidation Analysis assumes that all asset proceeds and creditor recoveries are at nominal amounts and does not consider the discounting of values over time. The discounting of values would result in lower recoveries to constituents than presented in this Liquidation Analysis.

******************

A summary of the Debtors' hypothetical chapter 7 Liquidation Analysis is as follows:

GSE (Consolidated)
Liquidation Analysis
($'s in '000)

Summary

| | Notes | 3/31/14 NBV | | Adj. Net Asset | | Base Recovery $ | | % |
|---|---|---|---|---|---|---|---|---|
| **Recoverable NA Assets** | | | | | | | | |
| Cash | [A] | $ | 4,147 | $ | 4,147 | $ | 4,147 | 100% |
| Trade Accounts Receivable | [B] | | 19,169 | | 16,294 | | 16,294 | 85% |
| Foreign Entity Intercompany (Net) | [C] | | 42,696 | | 29,965 | | 29,965 | 70% |
| Other Receivables | [D] | | 547 | | - | | - | 0% |
| Inventory | [E] | | 28,818 | | 25,242 | | 25,242 | 88% |
| Other Current Assets | [F] | | 3,638 | | - | | - | 0% |
| Property Plant and Equipment | [G] | | 24,054 | | 22,202 | | 22,202 | 92% |
| Goodwill | | | 5,205 | | - | | - | 0% |
| Customer Lists and Other Intangible Assets | [H] | | 4,231 | | - | | - | 0% |
| Other Assets | [I] | | 5,991 | | - | | - | 0% |
| North American Assets / Gross Proceeds | | $ | 138,496 | $ | 97,849 | $ | 97,849 | |
| | | | | | | | | |
| Preference / Fraudulent Conveyance | | | TBD | | TBD | | TBD | |
| Sale of SynTec, LLC | [J] | $ | 9,700 | $ | 4,850 | $ | 4,850 | 50% |
| Patents and Patents Pending | [K] | | - | | 600 | | 600 | |
| | | $ | 148,196 | $ | 103,299 | $ | 103,299 | |
| | | | | | | | | |
| **Total NA Gross Proceeds** | | $ | 148,196 | $ | 103,299 | $ | 103,299 | |

| **North American Gross Proceeds** | | | | | | $ | 103,299 | |

**NA Liquidation Expenses**     **Expenses**

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Payroll & Other Wind-Down Costs | | | | | | $ | 2,679 | |
| Excess Inventory and Plant Machinery Liquidation Costs | | | | | | | 1,000 | |
| Professional Fees | | | | | | | 3,000 | |
| Contingency Fees | | | | | | | 1,000 | |
| Trustee Fees | | | | | | | 3,099 | |
| **Total NA Liquidation Expense** | [M] | | | | | $ | 10,778 | |

| **North American Net Proceeds** | | | | | | $ | 92,521 | |

GSE (Consolidated)
Liquidation Analysis
($'s in '000)

| Foreign Entity Proceeds | | Projected EBITDAR | X | Discount(%) | Proceeds |
|---|---|---|---|---|---|
| Latin America | | $ 2,181 | 5.0x | 25% | $ 8,179 |
| Asia Pacific | | 12,578 | 5.0x | 25% | 47,168 |
| Europe / Africa | | 2,340 | 5.0x | 25% | 8,775 |
| Middle East | | 3,206 | 5.0x | 25% | 12,023 |
| | [L] | $ 20,305 | | | $ 76,144 |

| Foreign Entity Proceeds | | Proceeds | Bank Debt | Net Proceeds | |
|---|---|---|---|---|---|
| Latin America | | $ 8,179 | $ 20 | $ 8,159 | |
| Asia Pacific | | 47,168 | 29,508 | 17,660 | |
| Europe / Africa | | 8,775 | 4,504 | 4,271 | |
| Middle East | | 12,023 | 1,597 | 10,426 | |
| Foreign Entity Gross Proceeds | [L] | $ 76,144 | $ 35,629 | $ 40,515 | |

| Foreign Entity Proceeds | | Interco Rec. Trade | Interco. Payable Trade | Interco Rec. Note | Interco Payable Note |
|---|---|---|---|---|---|
| Latin America | | $ 12,482 | $ 154 | $ 6,500 | N/A |
| Asia Pacific | | 2,772 | 89 | 8,110 | N/A |
| Europe / Africa | | 2,717 | 2,129 | - | N/A |
| Middle East | | 6,437 | 65 | 6,115 | N/A |
| Foreign Entity Gross Proceeds | [L] | $ 24,408 | $ 2,437 | $ 20,725 | |

| Foreign Entity Proceeds | | Net Proceeds | Net Interco. Rec. Trade | Net Interco. Rec. Note | Proceeds Thru Interco. |
|---|---|---|---|---|---|
| Latin America | | $ 8,159 | $ 12,329 | $ 6,500 | $ 8,159 |
| Asia Pacific | | 17,660 | 2,683 | 8,110 | 10,793 |
| Europe / Africa | | 4,271 | 587 | - | 587 |
| Middle East | | 10,426 | 6,372 | 6,115 | 10,426 |
| Foreign Entity Gross Proceeds | [L] | $ 40,515 | $ 21,971 | $ 20,725 | $ 29,965 |

| Foreign Entity Proceeds | | | $ 40,515 |
|---|---|---|---|
| Less: Intercompany Allocated to NA Proceeds | | | 29,965 |
| Foreign Proceeds (Net of Interco.) | | $ | 10,550 |

Foreign Liquidation Expenses

| Trustee Fees | | | $ 316 |
|---|---|---|---|
| Total Foreign Liquidation Expense | [M] | $ | 316 |

| Foreign Entity Net Proceeds | $ 10,233 |
|---|---|

GSE (Consolidated)
Liquidation Analysis
*($'s in '000)*

### Estimated Recovery to Creditors

| | | |
|---|---|---:|
| North American Net Proceeds | $ | 92,521 |
| Foreign Entity Net Proceeds | | 10,233 |
| Total Net Proceeds | $ | 102,755 |

| | | | | Base Recovery | |
|---|---|---|---|---|---|
| **DIP Financing** | | Claims | | $ | % |
| DIP Financing | [N] | $ 40,588 | $ | 40,588 | 100% |
| Total DIP Financing | | $ 40,588 | $ | 40,588 | |

| | | |
|---|---|---:|
| Net Proceeds Available to Secured Claims | $ | 62,167 |

| | | | | Base Recovery | |
|---|---|---|---|---|---|
| **Pre-Petition Secured Claims** | Notes | Claims | | $ | % |
| Capital Leases | [O] | $ 1,769 | $ | 1,769 | 100% |
| Libor - 8786 | | $ 134,711 | $ | 45,600 | |
| Libor - 5044 | | 22,348 | | 7,565 | |
| Term Loan | [O] | $ 157,059 | $ | 53,165 | 34% |
| Prime Rate Loan - 8696 | | $ 5,974 | $ | 2,022 | |
| Libor - 8881 | | 13,355 | | 4,521 | |
| L/C - Drawn | | 2,040 | | 691 | |
| Revolver Facility | [O] | $ 21,370 | $ | 7,234 | 34% |
| Total Secured Claims | [O] | $ 180,197 | $ | 62,167 | 34% |

| | | |
|---|---|---:|
| Net Proceeds Available to Administrative and Priority Claims | $ | - |

| | | | | Base Recovery | |
|---|---|---|---|---|---|
| **Administrative and Priority Claims** | | Claims | | $ | % |
| Wages and Benefits | | $ 780 | $ | - | |
| Accrued and Unpaid Post- Petition Taxes | | 560 | | - | |
| Total Administrative / Priority Claims | [P] | $ 1,340 | $ | - | 0% |

| | | |
|---|---|---:|
| Net Proceeds Available to Unsecured Claims | $ | - |

| | | | | Base Recovery | |
|---|---|---|---|---|---|
| **Unsecured Claims** | | Claims | | $ | % |
| Class 4 Claims | | Unknown | | - | |
| Class 5 Claims | | 119,030 | | - | |
| Total Unsecured Claims | [Q] | $ 119,030 | $ | - | 0% |

**Detailed Footnotes**

*Asset Recovery Estimates*

(a) Cash: The Liquidation Analysis assumes that the Debtors' operations during the Wind-Down would not generate additional cash available for distribution except for the disposition of non-cash assets and would not require additional funding. If additional funding was required the recoveries indicated in this Liquidation Analysis would be reduced. All outstanding cash balances are assumed to be 100% recoverable and are projected amounts as of the Liquidation Date.

(b) Trade Accounts Receivable: Trade accounts receivable consist of amounts owed from customer sales generated by the Debtors' North American operations. The Liquidation Analysis assumes that a chapter 7 trustee would retain a reduced level of staff to handle an aggressive collection effort of outstanding trade accounts receivable. While the Debtors' historical bad debt reserve and write-offs have been nominal, the Debtors would anticipate an increase in non-collectible trade accounts receivable as a result of potential supply and business interruption issues with customers, as well as an inability to collect some foreign receivables (e.g., Central America), and potential customer offsets related to various Customer Programs as defined in the Debtors' first day Customer Programs motion and order (e.g., the Debtors' first day Customer Programs motion details approximately $1.1 million in warranty reserve claims from customers related to GSE Warranty Obligations, GSE Legacy Warranty Obligations and SynTec Legacy Warranty Obligations). Thus, the Liquidation Analysis assumes that the Debtors' would be able to recover approximately 85% of the net book value of domestic accounts receivable.

| ($'s in thousands USD) Trade Accounts Rec. Summary | Balance Sheet 4/30/2014 | Estimated % Recovery | Estimated $ Recovery |
|---|---|---|---|
| **Accounts Receivable Summary** | | | |
| Trade Accounts Receivable | $ 26,017 | | |
| Foreign Receivables | (5,270) | | |
| AR> 60 Days Past Due | (1,076) | | |
| A/R Subject to Offset | (502) | | |
| **Total Accounts Receivable (Net)** | $ 19,169 | 85% | $ 16,294 |

(c) Foreign Entity Intercompany (Net): This asset class includes foreign net amounts due from the sale of product to an affiliate or an affiliate customer, as well as direct and indirect SG&A allocations, and notes receivable. As discussed in Note 5 above, the Debtors' foreign entity intercompany accounts receivable and notes owed by the non-Debtor foreign entities will be satisfied from the sale proceeds of the non-Debtor foreign entities' assets.

(d) Other Receivables: This asset class includes an intercompany clearing account ($214K), state sales tax reimbursements ($322K), employee advances ($9K), and VAT tax refunds ($2K). It is assumed that the intercompany clearing account will not be settled up in a chapter 7 liquidation, the receivables for taxes and VAT will be offset by various administrative and/or priority claims for additional taxes, and the employee receivables will be offset by outstanding employee claims. Thus, there is no recovery percentage estimated for this asset class.

(e) Inventory: GSE's inventory includes raw materials (e.g., resins, polypropylene fibers, clay, Masterbatch), finished goods, and stores inventory (i.e., plant machinery and equipment spare parts). Estimated recovery has been valued as if the chapter 7 trustee filled and sold out the Debtors' current customer backlog for the Texas, South Dakota and South Carolina facilities and then liquidated any excess raw material, aged inventory and stores inventory. The Liquidation Analysis yields the following recoverable amounts and includes the following assumptions:

| ($'s in thousands USD) Inventory Summary | Balance Sheet 3/31/2014 | Estimated % Recovery | Estimated $ Recovery |
|---|---|---|---|
| Raw Materials | $ 10,277 | | |
| Finished Goods | 17,701 | | |
| Inventory Reserve | (1,265) | | |
| **Total Raw Material / Finished Goods (Net)** | $ 26,713 | 91% | $ 24,400 |
| Stores Inventory (Parts) | $ 3,294 | | |
| Stores Reserve | (1,190) | | |
| **Total Stores (Net)** | $ 2,105 | 40% | $ 842 |
| **Total Inventory (Net)** | $ 28,818 | 88% | $ 25,242 |

- Current raw material stocks are converted to finished goods and additional raw materials are purchased in order to satisfy the projected backlog. Recovery values on current finished goods inventory stocks include the raw material costs, conversion costs and a finished goods margin, all at recent historical amounts. Recovery values on current owned raw materials include the raw material costs. Recovery values on incremental production are at the finished goods margin. This process is estimated to take between two to eight weeks and varies by facility and size of backlog and is expected to yield approximately $15 million.

- Any excess raw materials after satisfying the customer backlog are then assumed to be liquidated at a discount from cost (approximate $200K recovery). Current finished goods inventory beyond order (i.e., aged inventory) was broken down into inventory less than one year, less than two years, or greater than two years and discounted accordingly to insure a sale during the Wind-Down period (approximate $9 million recovery). Lastly, scrap/regrind is assumed to be liquidated at scrap values (approximate $200K recovery). This liquidation process is estimated to take between eight to twelve weeks dependent upon when a facility actually completes the production required to fill the backlog, and amount of excess raw materials and amount of inventory beyond order remaining to be sold.

- Stores inventory (i.e., plant machinery and equipment spare parts) are liquidated during the Wind-Down period at approximately 40% of net book value and are expected to yield approximately $842K in the Liquidation Analysis.

(f) Other Current Assets: The primary assets in this asset class include prepaid insurance ($2.8 million) and prepayments to vendors ($778K). Neither of these assets is assumed to yield recoveries in the Liquidation Analysis, as it is expected that these assets would be used to reduce costs during the Wind-Down or would be offset against respective claims, although the Debtors would most likely have the ability to request a pro-rata refund on any unused premiums.

(g) Property, Plant and Equipment: Represents the Debtors' land, land improvements, buildings, fixed plant, plant machinery and equipment, office furniture and office equipment and software. The Liquidation Analysis yields the following recoverable amounts and includes the following assumptions:

| ($'s in thousands USD) PP&E Summary | Balance Sheet 3/31/2014 | Estimated % Recovery | Estimated $ Recovery |
|---|---|---|---|
| Land and Buildings | $ 12,770 | 70% | $ 9,000 |
| Fixed Plant, Machinery and Equipment | 9,626 | 133% | 12,800 |
| Rolling Stock | 56 | 178% | 100 |
| Lab Equipment | 80 | 188% | 150 |
| Furniture, Fixtures and Software | 1,521 | 10% | 152 |
| Total PP&E | $ 24,054 | 92% | $ 22,202 |

- Land and Buildings: The Texas, South Dakota and South Carolina facilities are likely to have recoverable value in a chapter 7 liquidation. In the Liquidation Analysis, it is assumed that all raw materials, inventory and machinery and equipment from these facilities are sold off during the Wind-Down and subsequently the vacant facilities are put on the market for sale through real estate brokers. The Liquidation Analysis assumes that the sale of the vacant Texas, South Dakota and South Carolina facilities could recover up to $9 million (this estimate takes into consideration property tax valuations for the facilities, the current real estate market for such locations and a further discount to insure a quick sale during the Wind-Down).

- Fixed Plant, Machinery and Equipment: The Texas, South Dakota and South Carolina plants' machinery and equipment are likely to have recoverable value in a chapter 7 liquidation. In the Liquidation Analysis, it is assumed that all of the plant lines are sold off during the Wind-Down, either in whole or parts. Each plant line was evaluated by management on a case by case basis and consideration was given to the age of the equipment (1980's to 2000's), historical buyer inquiries, asset offers received in the Debtors' recent sales process, foreign or domestic potential buyers, the current state of the market for the specific equipment (i.e., low or high market demand), as well as the potential for the Debtors' equipment sales to flood the market given their status as the largest geosynthetic containment manufacturer in the world. Discounts off of historical purchase prices ranged from approximately 90% to 55% in order to insure a sale of all plant machinery and equipment during the Wind-Down with a recovery estimate of approximately $12.8 million in the Liquidation Analysis.

- Rolling Stock: Rolling stock consisting of forklifts and cranes is expected to yield approximately $100K in the Liquidation Analysis.

- Lab Equipment: The sale of the Debtors' lab equipment in a chapter 7 liquidation is expected to yield approximately $150K in the Liquidation Analysis.

- Furniture, Fixtures, and Software: The sale of the Debtors' furniture, fixture and software in a chapter 7 liquidation has a projected recovery of approximately 10% of net book value and has a projected recovery of approximately $152K in the Liquidation Analysis.

(h)     Customer Lists and Other Intangible Assets: The primary assets in this asset category include customer lists and trademarks related to the 2013 SynTec acquisition ($3.4 million, and $829K, respectively). None of these asset values are assumed to be recoverable in a chapter 7 liquidation as there are no customer related long term supply agreements, excess capacity remains in the domestic markets, and there would be no going-concern value over and above the "quick sale" amount noted in the *Additional Recoveries from North American* Assets section below.

(i)     Other Assets: Other assets consist of unamortized debt issuance costs of approximately $6.0 million which are a GAAP based accrual and are assumed to yield no value in liquidation.

*Additional Recoveries from North American Assets:*

(j)     SynTec LLC ("SynTec"): In February 2013, GSE purchased SynTec for approximately $9.7 in order to expand its existing market share with additional products that were complementary to GSE's existing products. Given the relatively recent acquisition of SynTec and the stand-alone nature of its products, customers and equipment, the Liquidation Analysis assumes that a chapter 7 trustee would liquidate SynTec through a going concern "quick sale" of the business and equipment and could recover up to 50% of GSE's original purchase price (i.e., a recovery of approximately $4.8 million).

(k)     Patents and Patents Pending: The Debtors have a number of patents and patents pending, the majority of which have little to no value based on lack of sales volume or patent expiration. Although, several patents and patents pending are expected to have value based on expected sales volumes and premium margins and could yield a recovery of up to $600K in the Liquidation Analysis.

*Additional Recoveries from Foreign Assets:*

(l)     Latin America, Asia Pacific, Europe/Africa, Middle East: The Liquidation Analysis assumes a going concern sale of the non-Debtor foreign entities assets by using a 12 month projected EBITDAR, applying a 5X multiple and discounting that amount by a further 25% to account for investment banking fees and a going concern "quick sale" given a parent company chapter 7 liquidation scenario (i.e., the foreign locations operations and customer sales would most likely be disrupted, which in turn would reduce projected EBITDAR). Lastly, the resulting foreign asset valuation amounts were then reduced by any outstanding third party foreign bank debt to yield a recovery of up to $40.5 million in the Liquidation Analysis. For the purposes of this analysis no tax incurrence related to the sale of foreign entities has been assumed. There may be taxes due in connection with the sale of these entities but any taxes due would further reduce recoveries.

*Liquidation Expenses:*

(m)     Liquidation Expenses: The Liquidation Analysis assumes the chapter 7 liquidation of substantially all of the Debtors' assets over a six month period. During the first eight weeks, it is assumed that the chapter 7 trustee would arrange for the Debtors to honor their commitments relative to its projected domestic backlog rather than incur additional claims and litigation. Subsequently, the Debtors would discontinue all of its domestic business operations and the chapter 7 trustee would arrange for the Debtors to focus all of their efforts to sell all of the remaining domestic and foreign assets and in an orderly and expeditious manner.

Liquidation expenses include:

- Monthly payroll and other expenditures to maintain the corporate and North American headquarters through the Wind-Down. In a chapter 7 liquidation, the trustee would immediately reduce headcount

in certain departments, (e.g., executive, financial, legal, marketing, sales, research and development, technical), and take a more selective, phased in approach with other departments as the liquidation progressed over time and the assets are sold off (e.g., accounting, human resources, corporate information technology, operations and purchasing). A summary of corporate and North American Wind-Down costs (i.e., SG&A costs) is as follows:

($'s in thousands USD)

| Payroll and Wind-Down Cost Summary | Baseline | Month 1 | Month 2 | Month 3 | Month 4 | Month 5 | Month 6 | Total Cost |
|---|---|---|---|---|---|---|---|---|
| **Corporate IT** | | | | | | | | |
| Labor | $ 88 | $ 88 | $ 88 | $ 88 | $ 66 | $ 66 | $ 66 | $ 459 |
| Property Taxes | 7 | 7 | 7 | 7 | 7 | 7 | 7 | 42 |
| Professional and Consulting Services | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 20 |
| Repairs and Maintenance | 84 | 84 | 84 | 84 | 84 | 84 | 84 | 502 |
| Telecommunications | 38 | 38 | 38 | 38 | 38 | 38 | 38 | 230 |
| Travel | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 6 |
| Other | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 17 |
| **Corporate Accounting** | | | | | | | | |
| Labor | 94 | 71 | 71 | 71 | 24 | 24 | 24 | 282 |
| **Corporate Operations** | | | | | | | | |
| Labor | 58 | 58 | 58 | 58 | 29 | 29 | 29 | 259 |
| Travel | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 16 |
| **Corporate Human Resources** | | | | | | | | |
| Labor | 17 | 17 | 17 | 17 | 8 | 8 | 8 | 76 |
| Travel | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 11 |
| **N.A. Accounting** | | | | | | | | |
| Labor | 57 | 57 | 57 | 57 | 43 | 43 | 43 | 299 |
| **N.A. Office Maintenance** | | | | | | | | |
| Electricity | 8 | 8 | 8 | 8 | 8 | 8 | 8 | 49 |
| Labor | 8 | 8 | 8 | 8 | 4 | 4 | 4 | 38 |
| Property Taxes | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 27 |
| Repairs and Maintenance | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 38 |
| **N.A. Purchasing** | | | | | | | | |
| Labor | 57 | 57 | 57 | 57 | - | - | - | 171 |
| **N.A. Human Resources** | | | | | | | | |
| Labor | 29 | 15 | 15 | 15 | 7 | 7 | 7 | 66 |
| Professional and Consulting Services | 21 | 10 | 10 | 10 | 10 | 10 | 10 | 63 |
| Other | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 9 |
| **Grand Total** | $ 590 | $ 541 | $ 541 | $ 541 | $ 352 | $ 352 | $ 352 | $ 2,679 |

- Excess Raw Material, Inventory Beyond Order and Plant Machinery and Equipment Liquidation Expenses: Staffing and utility costs to execute the liquidation of excess raw materials, inventory beyond order and the preparation of plant machinery and equipment to be sold, is estimated at approximately $1 million for an eight to twelve week liquidation period.

- Additional liquidation expenses include $3.0 million for six months of professional fees for legal, accounting, and other professionals to assist the chapter 7 trustee with the Wind-Down, and a $1.0 million contingency for all other expenses that may arise.

- Liquidation expenses would also include chapter 7 trustee fees of 3% of total assets available for distribution (i.e., both foreign and domestic), in the amount of $3.4 million.

*Claims:*

(n)     DIP Facility: Includes approximately $40.5 million in loans as of July 31, 2014, made under the Debtor-In-Possession Credit Agreement between the Debtors, Cantor Fitzgerald as DIP Agent, and the DIP Lenders. Interest and fees under the DIP are assumed to be paid when due via use of the DIP and are reflected in the DIP balance as of the Liquidation Date.

(o) Pre-Petition Secured Claims: As of the Liquidation Date, the principal amount of the Debtors' consolidated funded debt obligations totaled approximately $180.1 million and comprised:

- Capital Leases: $1.7 million of obligations under certain capital leases primarily related to geosynthetic clay liner production equipment located in South Carolina, transport rail cars and a truck. The Liquidation Analysis assumes that the value of such equipment approximates the outstanding amount due on such capital leases and thus these claims are satisfied in full.

- Term Loan and Revolver: $178.4 million of obligations arising under the First Lien Credit Agreement, dated as of May 27, 2011 (as amended from time to time and with all supplements and exhibits thereto, the "First Lien Credit Agreement") by and between Debtors, Cantor Fitzgerald Securities, as successor administrative and collateral agent, and the lenders party thereto. The First Lien Credit Agreement provides the Debtors with a term loan (the "Term Loan") and a revolving credit facility (the "Revolver" and together with the Term Loan, the "First Lien Credit Facility") subject to the terms and conditions set forth therein. The Debtors use approximately $2 million of the Revolver in the form of letters of credit. Accrued and unpaid post-petition interest as of the Liquidation Dates is approximately $4.5 million. Obligations arising under the First Lien Credit Facility are guaranteed on a senior secured basis by three of four of the Debtors. The fourth Debtor, GSE Environmental, Inc. is the borrower. The obligations arising under the First Lien Credit Facility are also secured by liens on substantially all of the Debtors' assets, subject to certain exceptions, as well as the pledged stock of the Debtors and two-thirds of the non-Debtor affiliates GSE International, Inc. and GSE Lining Technology Chile S.A.

(p) Administrative and Priority Claims: Includes approximately $780K in accrued but unpaid employee compensation and benefits (e.g., unpaid wages, withholding obligations, payroll taxes, expense reimbursements and health insurance programs), approximately $300K for two months of accrued and unpaid sales taxes, and approximately $260K in accrued but unpaid real and personal property taxes due on the Texas, South Dakota and South Carolina facilities as of the Liquidation Date. All outstanding post-petition accounts payable are assumed to be paid cash in advance via use of the DIP and thus are reflected in the DIP balance as of the Liquidation Date. As previously noted, the cessation of the business in liquidation will trigger certain administrative claims that would not exist under the plan absent liquidation. A&M and the Debtors did not attempt to estimate any further post-petition administrative claims because no funds are estimated to be available for distribution to general unsecured creditors in the Liquidation Analysis.

(q) Unsecured Claims:

- Class 4 – Qualified Unsecured Trade Claims: Includes general unsecured claims for approximately $9.5 million in pre-petition trade accounts payable claims which are assumed to be reduced by amounts paid and authorized in the Debtors first day motions and orders (e.g., $7.0 million in vendor claims arising under section 503(b)(9) of the Bankruptcy code, $4.1 million in Critical Vendor Claims, $1.5 million in Shippers Claims, $1.8 million in Lien Claims). Any remaining Class 4 claim amounts are currently unknown.

- Class 5 – General Unsecured Claims: Includes, without limitation, litigation claims and claims from the rejection of executory contracts or unexpired leases during the chapter 11 cases (estimated to be approximately $1 million) and other general unsecured claims that may arise from the cessation of GSE's businesses in a chapter 7 liquidation which have not been estimated and these amounts may be substantial. Class 5 claims would also include a $118.0 million deficiency claim arising under the pre-petition First Lien Credit Agreement.

- Based on calculated recoveries from the Liquidation Analysis, it is assumed that there would be no proceeds available to distribute to any Unsecured Claims.